**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: THE HONORABLE JENNIFER CHOE-GROVES, JUDGE**

| | | |
|---|---|---|
| PT. ZINUS GLOBAL INDONESIA, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES, | ) | |
| | ) | Consol. Court No. 21-00277 |
| Defendant, | ) | PUBLIC VERSION |
| | ) | |
| and | ) | |
| | ) | |
| BROOKLYN BEDDING *ET AL.*, | ) | |
| | ) | |
| Defendant-Intervenors. | ) | |
| | ) | |

**DEFENDANT'S RESPONSE TO COMMENTS ON REMAND REDETERMINATION**

BRIAN M. BOYNTON
Principal Deputy
Assistant Attorney General

PATRICIA McCARTHY
Director

L. MISHA PREHEIM
Assistant Director

OF COUNSEL:

DAVID RICHARDSON
Senior Counsel
Office of Chief Counsel for
Enforcement and Compliance
U.S. Department of Commerce

KARA M. WESTERCAMP
Trial Attorney
U.S. Department of Justice
Trade Civil Division
Commercial Litigation Branch
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 305-7571

September 27, 2023

*Attorneys for Defendant*

## **TABLE OF CONTENTS**

**PAGES**

DEFENDANT'S RESPONSE TO COMMENTS ON
REMAND REDETERMINATION ..................................................................................1

BACKGROUND ............................................................................................................2

ARGUMENT ................................................................................................................3

    I.      Standard Of Review..........................................................................................3

    II.     Substantial Evidence Supports Commerce's Decision  To Include Zinus
         Indonesia's "In Transit" Mattresses As Mattresses Available For Sale
         During The POI And Its Decision Is Consistent With The Ratio Method
         Of Determining The Amount Of Indonesian Mattresses Sold, Which
         This Court Has Already Affirmed ...............................................................3

    III.    Commerce Properly Rejected Using The Affiliated NME Costs For
         NME-Sourced Inputs In Applying The Transactions Disregarded Rule
         Because They Are Not Market-Based Prices..................................................9

    IV.    Commerce Respectfully Requests A Remand To Open The Record And
         Collect The Information Necessary To Resolve The Issues Concerning
         Proper Allocation Of   NME-Sourced Inputs In Applying The
         Transactions Disregarded Rule Bec Zinus Korea's Selling Expenses
         To The Zinus Indonesia U.S. Sales In Which It Participated ...................15

CONCLUSION............................................................................................................17

**TABLE OF AUTHORITIES**

**CASES**                                                                                      **PAGES**

*Best Mattresses International Co. Ltd. v. United States*,
  622 F. Supp. 3d 1347 (Ct Int'l Trade 2023) ....................................................... 13, 14

*Borusan Mannesmann Pipe U.S. Inc. v. United States*,
  No. 20-00012, 2020 WL 3470104, at *4 (June 25, 2020) ....................................... 17

*Carbon Activated Tianjin Co., Ltd. v. United States*,
  503 F. Supp. 3d 1278 (Ct. Int'l Trade 2021) ........................................................ 13

*Changzhou Hawd Flooring Co., Ltd. v. United States*,
  6 F. Supp. 3d 1358 (Ct. Int'l Trade 2014) ............................................................ 16

*Consol. Edison Co. v. NLRB*,
  305 U.S. 197 (1938) ............................................................................................ 3

*Consolo v. Fed. Mar. Comm'n*,
  383 U.S. 607 (1966) ............................................................................................ 3

*Gleason Indus. Prod. Inc. v. United States*,
  31 CIT 393 (2007) .............................................................................................. 16

*MacLean-Fogg Co. v. United States*,
  100 F. Supp. 3d 1349 (Ct. Int'l Trade 2015) ......................................................... 3

*Nippon Steel Corp. v. United States*,
  458 F.3d. 1345 (Fed. Cir. 2006) ........................................................................ 8, 9

*SKF USA Inc. v. United States*,
  254 F.3d 1022 (Fed. Cir. 2001) .......................................................................... 16

*Zinus Global Indonesia v. United States*,
  628 F. Supp. 3d 1252 (Ct. Int'l Trade) ........................................... 1, 2, 4, 5, 10, 15

## STATUTES

19 U.S.C. § 1561a(b)(1)(B)(i) ................................................................................ 3

19 U.S.C. § 1677a(b) ............................................................................................ 7

19 U.S.C. § 1677b(c) ............................................................................................ 12

19 U.S.C. § 1677b(f)(2)-(3) ................................................................................. 9, 10

19 U.S.C. § 1677e(a)(2)(D) ........................................................................................... 8

**REGULATIONS**

19 C.F.R. § 351.401(b) ................................................................................................. 9

**ADMINISTRATIVE DETERMINATIONS**

*Mattresses From Indonesia,*
    86 Fed. Reg. 15,899 (Dep't of Commerce Mar. 25, 2021) ......................................... 2

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: THE HONORABLE JENNIFER CHOE-GROVES, JUDGE**

| | |
|---|---|
| PT. ZINUS GLOBAL INDONESIA, | ) |
| Plaintiff, | ) |
| v. | ) |
| UNITED STATES, | ) |
| Defendant, | ) Consol. Court No. 21-00277 |
| and | ) PUBLIC VERSION |
| BROOKLYN BEDDING *ET AL.*, | ) |
| Defendant-Intervenors. | ) |

## DEFENDANT'S RESPONSE TO COMMENTS ON REMAND REDETERMINATION

Defendant, the United States, respectfully submits this response to the comments filed by plaintiff, PT. Zinus Global Indonesia (Zinus Indonesia or plaintiff), ECF No. 64, and defendant-intervenors, Brooklyn Bedding, LLC, Corsicana Mattress Company, Elite Comfort Solutions, FXI, Inc., Innicor Inc., Kolcraft Enterprises Inc., Leggett & Platt, Incorporated, International Brotherhood of Teamsters, United Steel Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International, AFL-CIO (collectively, defendant-intervenors), ECF No. 62, regarding the final results of redetermination filed by the United States Department of Commerce (Commerce) in accordance with this Court's decision and remand order in *PT. Zinus Global Indonesia v. United States*, 628 F. Supp. 3d 1252 (Ct. Int'l Trade).  *See* Final Results of Redetermination Pursuant to Court Remand, June 9, 2023, ECF No. 60 (Confidential) and ECF No. 59 (Public) (Remand Redetermination).  For the reasons explained below, we respectfully request that the Court grant our request for a remand for Commerce to

open the record and collect the information necessary to resolve the issues concerning proper allocation of Zinus Korea's selling expenses to the Zinus Indonesia U.S. sales in which it participated, and otherwise sustain Commerce's remand redetermination.

## <u>BACKGROUND</u>

On March 20, 2023, this Court, remanded the final determination of the less-than-fair-value investigation covering Mattresses from Indonesia. *Mattresses From Indonesia*, 86 Fed. Reg. 15,899 (Dep't of Commerce Mar. 25, 2021) (final LTFV determ.), and accompanying Issues and Decision Memorandum (IDM) (P.R. 284).  The Court held that it could not sustain Commerce on three issues.

First, this Court held that Commerce had not provided the explanation and cites to record evidence to support its decision to include Zinus Indonesia's mattresses in transit to the Zinus U.S.A. warehouse as part of the mattresses available for sale.  *PT. Zinus*, 628 F. Supp. 3d at 1265.  Second, this Court held that Commerce did not provide in its determination sufficient record cites and did not address some of the petitioners' arguments in accepting Zinus Korea's reported selling expenses.  *Id*. at 1281-82.  Third, this Court held that in applying the transactions disregarded rule, Commerce's interpretation of the term "market under consideration" was incorrect.  *Id*. at 1285.

As explained below, Commerce has now 1) provided an official explanation with cites to the relevant record evidence concerning the in-transit sales; 2) addressed all of defendant intervenors' arguments and cited supporting record evidence; and 3) corrected its interpretation of the transaction disregarded rule to be consistent with recent Court precedent.  However, we also respectfully request that the Court grant our request for a remand for Commerce to open the

record and collect the information necessary to resolve the issues concerning proper allocation of

Zinus Korea's selling expenses to the Zinus Indonesia U.S. sales in which it participated.

## ARGUMENT

## I.    Standard Of Review

In remand proceedings, the Court will sustain Commerce's determinations if they are "in

accordance with the remand order," and are "supported by substantial evidence, and are

otherwise in accordance with law." *MacLean-Fogg Co. v. United States*, 100 F. Supp. 3d 1349,

1355 (Ct. Int'l Trade 2015) (citing 19 U.S.C. § 1516a(b)(1)(B)(i)).  "Substantial evidence"

means "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).  Substantial evidence may

be "less than the weight of the evidence, and the possibility of drawing two inconsistent

conclusions from the evidence does not prevent an administrative agency's finding from being

supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1996).

## II.   Substantial Evidence Supports Commerce's Decision To Include Zinus Indonesia's "In Transit" Mattresses As Mattresses Available For Sale During The POI And Its Decision Is Consistent With The Ratio Method Of Determining The Amount Of Indonesian Mattresses Sold, Which This Court Has Already Affirmed

Commerce's decision on remand to include Zinus Indonesia's sales of mattresses in

transit to the Zinus U.S. warehouse from Indonesia complies with the Court's remand order by

providing additional explanation and evidence to support their inclusion.  As explained below,

Commerce attached to the remand redetermination the exhibit of purchases of mattresses during

the period of investigation (POI) along with the method of determining from the available record

evidence that Zinus Indonesia sold more of the subject mattresses in the United States than were

in inventory.  Remand Redetermination at 6-9 and Attachment 1.

Plaintiff primarily challenges this determination by attacking the method by which Commerce determined the number of subject mattresses attributable to Zinus Indonesia. *See* Zinus Indonesia's Comments at 3-17. Plaintiff weaves into its background and its argument its first-in-first-out (FIFO) inventory methodology ending with a plea to the Court to possibly reconsider its decision. *See id*. But this Court has already soundly rejected plaintiff's arguments that Commerce should use the FIFO methodology over Commerce's ratio methodology, *PT. Zinus*, 628 F. Supp. 3d at 1264-65, and the Court need not revisit its decision. Plaintiff's arguments are otherwise without merit, as we explain below.

As Commerce explained in the final determination, Zinus Indonesia was unable to identify the country of origin of the mattresses it sold from the Zinus U.S. warehouse because once the mattresses entered the warehouse, Zinus U.S. did not keep track of the country of origin of the mattresses it sold and relevant mattress models were produced in and sourced from more than one country. IDM at 8-9. As a result, Commerce devised an alternate method of relying on the ratio of the number of mattresses Zinus U.S. purchased from different countries during the period of investigation. *Id*. This Court sustained Commerce's ratio methodology:

> The Court concludes that Commerce expressed reasonable concerns regarding the accuracy of the first-in-first-out methodology. This Court notes that Commerce was not required to adopt the first-in-first-out methodology proposed by Plaintiff over the valid alternative quarterly ratios methodology. Commerce explained that the quarterly ratios methodology was preferable because it was grounded in Zinus U.S.' **purchase data**, was applied to the totality of the subject merchandise available for sale during the period of investigation and was neutral in determining which sales to designate as subject merchandise. In the absence of accurate records maintained by Zinus Indonesia and Zinus U.S., the Court concludes that Commerce's use of the quarterly ratios methodology was reasonable because Commerce determined that it more accurately identified the quantity of subject mattresses sold than the alternate proposed method {FIFO} that Commerce deemed questionable.

4

*PT. Zinus*, 628 F. Supp. 3d at 1264-65 (emphasis added and citations omitted).

Commerce explained in the final determination that it made its calculations based on Zinus U.S. mattress purchases during the POI, IDM at 8-9, which this Court sustained. *PT. Zinus*, 628 F. Supp. 3d at 1264-65. The purchase data include all purchases during the POI from all countries regardless of whether the mattresses had entered the United States. IDM at 8-9. To exclude only those mattresses from Indonesia which were in transit would distort the ratio for Commerce's determination of the quantity of mattresses based on purchase data. *Id.* Therefore, the Court should reject Zinus Indonesia's attempt to resurrect its Commerce-and-Court-rejected FIFO methodology.

In the proper context of the reasonable ratio methodology based on POI ***purchase data*** and because the record contains no other inventory quantity data, Commerce's decision in the remand to include the in-transit sales is reasonable and supported by record evidence. Remand Redetermination at 3-4, 6-9. In the remand redetermination, Commerce attached the data set for the quantity and value of all mattresses purchased from each country during the POI. Remand Redetermination at Attachment 1; *see also* Section A Supplemental Questionnaire Response at Exh. SA-5 (C.R. 154). From this list Commerce identified the subject merchandise models from all countries and added up the quantity purchased to arrive at [ ▮ ] subject mattress purchased during the POI. Remand Redetermination at 6. Commerce subtracted from that number the amount of those models Zinus U.S. sold from its warehouse during the POI ([ ▮ ]) to arrive at the conclusion that Zinus U.S. sold more mattresses of the models that were under investigation than it had in inventory. Remand Redetermination at 6; *see also* Section C Questionnaire Response at Exhibit C-2B (C.R. 97). In other words, Commerce found that Zinus U.S. sold [ ▮ ] more subject mattresses than it had in inventory. Remand

Redetermination at 6.  Therefore, Commerce "reasonably concluded that the difference could only be accounted for by the mattresses in transit." *Id.* at 6.

Further, Commerce explained that "Zinus has provided no evidence that it had sufficient mattresses in inventory to satisfy the number of the relevant types of mattresses sold during the POI." *Id.* at 7.  Commerce "conclude{d} that it is reasonable to presume that some of the mattresses that were invoiced during the POI must have been shipped and were destined for the U.S. warehouse during the POI because, again, Zinus' reported data show more sales than the number of the relevant mattresses in inventory during the POI." *Id.*

Moreover, Commerce rejected Zinus's argument that Commerce improperly combined sales across sales channels, because "Commerce only included in its {constructed export price (CEP)} inventory analysis the mattresses in the warehouse and in transit to the warehouse." *Id.* at 8.  In other words, Commerce did not include other sales channels, such as "any mattresses for direct sales or back-to-back CEP sales, as reflected in Zinus' own data to which Commerce cites as the basis for its CEP inventory sales analysis." *Id.*

Zinus Indonesia's challenges to Commerce's remand redetermination are meritless.  First, Zinus Indonesia argues that Commerce's discussion of the definition of CEP sales is ***irrelevant*** to the issue.  Zinus Indonesia Comment at 11 & n.2.  Without citing any authority, Zinus Indonesia proclaims that relevant sales are "*those physically held in U.S. inventory and thus available for sale out of inventory to unaffiliated U.S. customers.*" *Id.* at 11 (emphasis in original).  The definition of which sales to include in the calculation for the period under examination is not irrelevant but is critical to Commerce's ability to accurately perform the dumping calculation by identifying the sales to be included.  Indeed, the relevant statutory language which Zinus Indonesia deems irrelevant is that a CEP sale is the "price at which the

subject merchandise is first sold . . . in the United States before or after the date of importation . .

." 19 U.S.C. § 1677a(b).  Thus, the statute defines relevant sales as those at issue in this case to

include sales which are made "before" importation, which is directly relevant to this case.  *Id.*

The Court should reject Zinus Indonesia's attempts to remove this statutory definition from

consideration.

Second, Zinus Indonesia argues that Commerce speculates that in-transit mattresses were

being sold.  Zinus Indonesia Comments at 12.  Rather than speculate, Commerce explained that

more of the relevant mattresses were sold than purchased by Zinus U.S. during the POI.  Remand

Redetermination at 6-7.

Relatedly, Zinus Indonesia argues that all of its U.S. sales were invoiced and shipped

during the POI allegedly proving that none of the in-transit mattresses could have been sold.

Zinus Indonesia Comments at 12-13.  In the remand redetermination, Commerce found that the

fact that Zinus U.S.'s books and records indicated that U.S. sales had been invoiced and shipped

conflicted with the purchase inventory records which indicated that more of the relevant models

of mattresses were sold than Zinus U.S. had purchased.  Remand Redetermination at 7-8.

Commerce, again, did not speculate.  The record facts support Commerce's determination.

Zinus Indonesia has not identified any specific record evidence indicating that there were

additional quantities of the relevant mattress models produced across countries to account for the

record fact that there were more sales than purchases of the relevant mattresses.  *Id.* at 7.

Third, Zinus Indonesia argues that Commerce did not take pre-existing inventory into

consideration, that is, inventory that existed prior to the POI.  Zinus Indonesia Comments at 13-

14.  As an initial matter, there was no Indonesia-sourced mattress inventory prior to the POI

because Zinus Indonesia did not begin commercial production and sales until the second quarter

of the POI.  Remand Redetermination at 8-9.  In the remand redetermination, Commerce found

that Zinus Indonesia had identified no evidence of the prior inventory quantities sourced from

other countries that were "allegedly already in inventory at the beginning of the POI."  *Id.* at 8.

And although Zinus Indonesia argues that its financial statements indicate a general

starting inventory value, it does not identify that inventory by models or quantities of mattresses.

Zinus Indonesia's Comments at 15.  To the extent Zinus Indonesia argues that its accounting

system did not treat the in-transit mattresses as for sale, *id.* at 16, it fails to identify any record

evidence of missing relevant mattress quantities.  Remand Redetermination at 7-8.  Therefore,

rather than base its arguments on direct record evidence of the relevant mattress quantities in

inventory, it is Zinus Indonesia, not Commerce, who speculates about relevant mattress

quantities.  *Id.*  In other words, using Zinus's own data, substantial evidence supports

Commerce's determination that mattresses in transit account for the inventory differences during

the POI.  *Id.* at 6-8.

Finally, Zinus Indonesia argues that Commerce improperly applied facts available with

an adverse inference to its inventory quantities.  Zinus Indonesia Comments at 17-20.  Zinus

Indonesia is incorrect.

As an overarching matter, Commerce cannot apply facts available with an adverse

inference unless it "examine{s} a respondent's actions and assess{es} the extent of the

respondent's abilities, efforts, and cooperation in responding to Commerce requests for

information."  *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1382 (Fed Cir. 2003).

Notably, "Commerce has no authority to apply adverse facts and inferences unless the

respondent has failed to provide requested information when notified of the deficiency, and has

not acted to the best of its ability in responding to such requests."  19 U.S.C. § 1677e(a)(2)(D).

In this case, Commerce did not apply an adverse inference to Zinus Indonesia's quantity of mattresses sold during the POI.  Remand Redetermination at 6-8.  Because Zinus Indonesia could not identify the country of origin of the mattresses it sold out of inventory, IDM at 8-9, Commerce determined that more relevant mattresses had been sold than were purchased for sale. Remand Redetermination at 6-8.  The fact that Zinus Indonesia could not identify any other record evidence of inventory quantities is not a conclusion based on an adverse inference; rather, it is a conclusion based on examination of the record evidence (or lack hereof) in this investigation.  *Id.*  This is not an adverse determination in the sense contemplated by the adverse facts available criteria where a party refuses to submit requested data or impedes the proceeding thereby not acting to the best of its ability.  *See Nippon*, 337 F.3d at 1382.

Thus, because Commerce has provided the explanation and cites to record evidence requested by the Court and Zinus Indonesia's arguments to the contrary are meritless, this Court should sustain Commerce's remand redetermination regarding the inclusion of in-transit mattresses in the ratio calculations.  Remand Redetermination at 6-8.

## III.    Commerce Properly Rejected Using The Affiliated NME Costs For NME-Sourced Inputs In Applying The Transactions Disregarded Rule Because They Are Not Market Based Prices

In the underlying determination, Commerce disregarded the transaction values for 10 types of mattress material inputs that Zinus Indonesia had purchased from a Zinus Korea affiliate in China, a non-market economy country.  *See* IDM at 16-19; 19 U.S.C. § 1677b(f)(2)-(3); 19 C.F.R. § 351.401(b).  Commerce instead valued these inputs using Global Trade Atlas (GTA) import data into Indonesia, excluding any imports from non-market economy countries.  IDM at 18-19.  Commerce explained that under the transaction disregarded provision, it was narrowly required to use price available in the "market under consideration," in this case, Indonesia.  *PT.*

*Zinus*, 628 F. Supp. 3d at 1285.  The Court held that Commerce's interpretation was unreasonably narrow even though Commerce might still select the Indonesian data on remand if Commerce explains its reasoning.  *Id*.

In the Remand Redetermination, Commerce explained that the statutory provision did not always require the use of Indonesian data as the country under investigation.  Remand Redetermination at 18-19.  Commerce explained while there is a "preference" for prices available to the respondent in the respondent's market, the availability of record data may require Commerce to use other sources.  *Id*. at 18.  Commerce also pointed to its established hierarchy in applying the transactions disregarded rule demonstrating that data from other markets may be used.  *Id*.

Commerce, first, seeks to compare the input prices the respondent paid to the affiliated party with prices the respondent paid to unaffiliated parties.  *Id.*  In the absence of prices paid to unaffiliated input sellers, Commerce then will normally compare the price charged by the affiliated input producer to other unaffiliated customers of the affiliated input supplier.  *Id.*  In the absence of affiliated respondent prices to other unaffiliated customers, Commerce normally uses the cost of production for the affiliated supplier or other information available.  *Id.*  Commerce also explained that it will not use the cost of production for the affiliated supplier if it is located in a non-market economy country and, thus, its prices are not market based.  *Id.*  And the statute provides in the absence of any of the above information on the record "the amount shall be based on the information available as to what the amount would have been if the transaction had occurred between persons who are not affiliated."  19 U.S.C. § 1677b(f)(2).  As demonstrated from Commerce's longstanding practice, Commerce does not intend to limit the phrase "market under consideration" in the transactions disregarded provision to always mean

10

the market in which the respondent is located.  Remand Redetermination at 19.  What is actually used depends heavily on what information is available on the record of the segment of the proceeding.  *Id.*

    With this practice in mind, Commerce looked at the record data and applied its test.  In relevant part, Commerce determined that for some of the 10 NME inputs at issue purchased from affiliated NME suppliers, the respondent did not purchase any quantities from unaffiliated suppliers.  Remand Redetermination at 17, 22.  For those inputs, Commerce then determined that it could not use the sales or cost of production of the affiliated NME input producer because they were not reflective of market prices and thus could not be a benchmark for a market price.  *Id.* at 18-19, 23.  The only other relevant information on the record was the GTA data from several countries (including Indonesia) for the inputs at issue.  *Id.* at 19-20.

    In selecting the Indonesian GTA data, Commerce explained that the "Indonesian GTA data { } reflect the market economy imports of the relevant inputs into Indonesia which could reasonably be expected to be available to the respondent."  *Id.*  Commerce went on to find that the GTA data on imports into countries other than Indonesia "would not necessarily be available to {the} Indonesian respondent."  *Id.* at 20.  Thus, Commerce continued to determine "to use the market import data for the relevant inputs into Indonesia, rather than an average of Indonesia's import data with that of other countries."  *Id.*

    Defendant-Intervenors, while acknowledging that the statute prefers use of prices experienced by the respondent, argue that Commerce has inexplicably changed its practice. Defendant-Intervenors Comments at 10-11.  In their view, Commerce's failure to use a variation on the NME methodology, in particular, an average of surrogate GTA data from countries

economically comparable to the NME suppliers' country as benchmarks, somehow violates the focus on the respondent's "unique experience." *Id.* Defendant-Intervenors are wrong.

As Commerce explained in the remand redetermination, the goal of the transactions disregarded analysis is to ensure that the prices between affiliates are consistent with market prices so as not to distort dumping calculations with non-market prices and costs. Remand Redetermination at 22-23. In fact, the statute has a specific provision directing Commerce to *not* rely on the normal value prices and costs in cases involving a non-market economy country but directing Commerce to resort to market economy pricing data to value the NME factors of production to determine normal value. *See* 19 U.S.C. § 1677b(c).

In this case, there is no dispute that China is a non-market economy, and Commerce explained in the remand redetermination that the pricing and cost data of Zinus Indonesia's Chinese affiliates were not market prices or costs. Remand Redetermination at 18, 23. Defendant-Intervenors ignore this explicit finding and claim that Commerce has failed to explain why it is relying on Indonesian data as a proxy for the Indonesian market. Defendant-Intervenors Comments at 11. This argument is meritless. Commerce explained that there is a preference under the transactions disregarded rule for Commerce to use market pricing data available to the producer in Indonesia, when available on the record. Remand Redetermination at 18. Such data were available here. *Id.*

Defendant-Intervenors also argue that Commerce's decision to use only Indonesian GTA import data instead of a basket of other country import data is not explained. Defendant-Intervenors Comments at 11-12. Defendant-intervenor cites two instances in which Commerce has used more than one country's GTA data but makes no attempt to analyze what data was on the record of those cases from which Commerce had to choose. *Id.*

Defendant-Intervenors first cite Commerce's *preliminary* determination in this case, in which Commerce used an average of the GTA data for Indonesia, Brazil, Malaysia, Mexico, Romania, Russia and Turkey.  *Id.*  However, Commerce's preliminary review results were just that—*preliminary*—and were not adopted in the final determination.  *See, e.g.*, *Carbon Activated Tianjin Co., Ltd. v. United States*, 503 F. Supp. 3d 1278, 1286–87 (Ct. Int'l Trade 2021) (explaining that although "Commerce has the flexibility to change its position" from the preliminary results to the final results, the agency must "explain the basis for its change" and that explanation must be "supported by substantial evidence.") (citations omitted).  In the final determination and in the remand redetermination, Commerce only used the Indonesian GTA import data and did not average in the other countries because the statutory preference in the application of the transaction disregarded rule is to reflect prices that would be available to the respondent.   Thus, the Indonesian GTA data better represents that price than import prices into other markets that would not necessarily be available to the Indonesian respondent.  Remand Redetermination at 19-20 and 22; IDM, at 18-19.  Commerce explained the basis for the change in the final determination and then further explained in the remand redetermination that "import prices into Indonesia are more likely to be available to the Indonesian respondent and represent inputs relevant to the respondent's purchasing experience."  Remand Redetermination at 22.

Next, Defendant-Intervenors cite *Best Mattresses International Co. Ltd. v. United States*, 622 F. Supp. 3d 1347, 1358 (Ct Int'l Trade 2023), for the proposition that Commerce can use third country data for a non-market economy supplier.  Defendant-Intervenors Comments at 12.  However, while Commerce agreed in the remand redetermination that it may use third country data, it depends on what data were on the record of the proceeding at issue, Remand Redetermination at 23, and the facts of *Best Mattresses* are readily distinguishable.  In *Best*

*Mattresses*, an investigation covering mattresses from Cambodia, under the transaction disregarded rule, Commerce resorted to Cambodian Trademap import data from a source other than GTA and not a basket of third country GTA data.  *Id*. at 1366, 1386.  Although the Court in *Best Mattresses* likewise remanded Commerce's same narrow interpretation of "market under consideration," the Court in *Best Mattresses* explicitly did not preclude Commerce from using *only* Cambodian import data on remand.  *Id*. at 1384.

*Best Mattresses* is also distinguishable because Commerce used third country GTA import data from six countries under a different statutory provision, the major input rule (19 U.S.C. § 1677b(f)(3)), and did so *only* for purposes of the major input rule.  Although Commerce's transactions disregarded practice allows the use of cost of production (like the major input rule) as a proxy for market price if there are no market prices, the focus of the comparison is transfer price to market price. 19 U.S.C. § 1677b(f)(2).  In contrast, the major input rule explicitly compares transfer price to market prices ***and*** cost of production and instructs Commerce to take the higher of the three prices.  *Id.* § 1677b(f)(3).  When applying the transactions disregarded rule in this case, Commerce examined the record and found a market price -- the GTA Indonesian trade data -- and used it.  Remand Redetermination at 23.  It was not necessary for Commerce to use the last resort option of cost of production data, or in other words, for Commerce to use the basket of six-country GTA data.  *Id.*  Thus, Contrary to Zinus Indonesia's argument, Commerce consistently applied the transactions disregarded analysis in both *Best Mattresses* and in the instant case.

Based on the above, Commerce does not have a practice of using a basket of GTA data for countries economically comparable to the NME suppler country under the transactions disregarded rule when market price data is available.  Remand Redetermination at 22-23.

Commerce has a transactions disregarded NME practice of preferring import prices available to the respondent in the respondent's country to the extent the record data permits.  *Id.*

Consistent with the Court's remand order, Commerce agreed with the Court on the interpretation of the term "market under consideration," in that Commerce is not limited to "use only the market under investigation or review as the 'market under consideration.'"  *Id.* at 22. Commerce also further explained why it selected the Indonesian GTA import data and rejected using the GTA import data from the six market economy countries at the same level of economic development as the input source, China.  *Id.* at 22-23.  Accordingly, the Court should sustain Commerce's use of the Indonesia GTA import data to value non-major inputs under the transactions disregarded rule as it is supported by substantial record evidence and is otherwise in accordance with law.

**IV.    Commerce Respectfully Requests A Remand To Open The Record And Collect The Information Necessary To Resolve The Issues Concerning Proper Allocation Of Zinus Korea's Selling Expenses To The Zinus Indonesia U.S. Sales In Which It Participated**

In its Remand Order, the Court held that Commerce did not provide sufficient record cites and did not address some of Defendant-Intervenors' arguments in accepting Zinus Korea's reported selling expenses.  *PT. Zinus*, 628 F. Supp. 3d at 1281-2.  Although Commerce identified record evidence supporting its decision in the remand redetermination, Remand Redetermination at 9-12,14-16, upon review of defendant-intervenors' comments to this Court on the remand determination, it has become clear to Commerce that the record is missing information as to the nature and full extent of Zinus Korea's involvement in the sale of Zinus Indonesia's mattresses. In order to address defendant-intervenor's comments, Commerce would need to issue detailed supplemental questions about exactly what selling activities Zinus Korea does and provide expense data associated with them.  As it currently stands, there is conflicting evidence on the

record with no way for Commerce to discern what activities took place or to derive expense amounts other than an arbitrary assignment as to what portion of Zinus Korea's selling expenses should or could be attributable to Zinus Indonesia sales.  As a result, there may be additional Zinus Korea selling expenses which have not yet been accounted for in the dumping calculations, and Commerce respectfully requests a remand to collect the relevant information to resolve the issue regarding the amount of Zinus Korea's selling expenses which are attributable to Zinus Indonesia's U.S. mattress sales.

Under these circumstances, remanding this matter is appropriate.  "When an agency action is reviewed by the courts, . . . the agency may request a remand, without confessing error, to reconsider its previous position." *SKF USA Inc. v. United States*, 254 F.3d 1022, 1029 (Fed. Cir. 2001).  Remand is "usually appropriate" if "the agency's concern is substantial and legitimate." *Id.* at 1029.  "A concern is substantial and legitimate when (1) Commerce has a compelling justification, (2) the need for finality does not outweigh that justification, and (3) the scope of the request is appropriate." *Changzhou Hawd Flooring Co., Ltd. v. United States,* 6 F. Supp. 3d 1358, 1360 (Ct. Int'l Trade 2014).  Further, as this Court has explained, when an agency seeks a voluntary remand "to correct a mistake or address some other substantial and legitimate concern, it is far more sensible for a court to defer to the agency whose expertise, after all, consists of administering the statute." *Gleason Indus. Prod. Inc. v. United States*, 31 CIT 393, 396 (2007).

Our request in this case meets this standard.  First, we seek a voluntary remand for Commerce to open the record and collect the information necessary to determine the amount of Zinus Korea's selling expenses attributable to Zinus Indonesia's U.S. sales.  Without this

information, there is insufficient information on the record to resolve the issue, which is a

compelling reason for requesting the remand.

Second, the need for finality does not outweigh the justification for a voluntary remand

because Commerce has now realized that there is insufficient record data upon which to make a

decision regarding Zinus Korea's selling expenses incurred for Zinus Indonesia's U.S. mattress

sales. Therefore, on remand, Commerce will provide the specific relief that defendant-

intervenors seek – the collection of this information. Thus, "remanding for reconsideration now

essentially expedites relief that {the plaintiff} seeks and may obviate the necessity for remand

(or, perhaps, any proceedings) later." *Borusan Mannesmann Pipe U.S. Inc. v. United States*, No.

20-00012, 2020 WL 3470104, at *4 (June 25, 2020).

Third, the scope of Commerce's remand request is appropriate because it is limited to

only the information and explanation necessary to resolve this selling expense issue.

In sum, a remand will foster the just, speedy, and inexpensive resolution of this case.

USCIT R. 1. Remand will also conserve judicial resources on a matter that may well be mooted

or resolved by the agency action in this matter. Accordingly, we respectfully request that the

Court grant our request for a remand on this limited issue.

## **CONCLUSION**

For these reasons, we respectfully request that the Court grant our request for a voluntary

remand on the issue of selling expenses and otherwise sustain the results of Commerce's remand

redetermination.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant
Attorney General

17

PATRICIA M. McCARTHY
Director

/s/ L. Misha Preheim
L. MISHA PREHEIM
Assistant Director

OF COUNSEL:                          /s/ Kara M. Westercamp
                                     KARA M. WESTERCAMP
DAVID RICHARDSON                     Trial Attorney
Senior Counsel                       U.S. Department of Justice
Office of the Chief Counsel for      Trade Civil Division
Enforcement and Compliance          U.S. Department of Justice
U.S. Department of Commerce          Civil Division
                                     P.O. Box 480
                                     Ben Franklin Station
                                     Washington, D.C.  20044
                                     Tel: (202) 305-7571

September 27, 2023                   *Attorneys for Defendant*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Standard Chambers Procedure ¶ 2(B)(2), I hereby certify that this brief contains 5,009 words.  In making this certification, I have relied upon the word count function of the Microsoft Word processing system used to prepare this brief.

*/s/Kara M. Westercamp*

KARA M. WESTERCAMP

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE:  THE HONORABLE JENNIFER CHOE-GROVES, JUDGE**

| | |
|---|---|
| PT. ZINUS GLOBAL INDONESIA,<br><br>              Plaintiff,<br>      v.<br><br>UNITED STATES,<br><br>              Defendant,<br>      and<br><br>BROOKLYN BEDDING *ET AL.*,<br><br>              Defendant-Intervenors. | )<br>)<br>)<br>)<br>)<br>)<br>)     Consol. Court No. 21-00277<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## <u>ORDER</u>

Upon consideration of plaintiffs' and defendant-intervenors' comments regarding the remand redetermination, defendant's response thereto, and all other pertinent papers, it is hereby

ORDERED that the defendant's motion for a voluntary remand is granted; and it is further

ORDERED that the remand redetermination is otherwise sustained.

.


Date:_____                                          _____
     New York, NY                                                    Judge