Slip Op. 24-19

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **PT. ZINUS GLOBAL INDONESIA,**<br><br>  **Plaintiff,**<br><br>**and**<br><br>**BROOKLYN BEDDING, LLC, CORSICANA MATTRESS COMPANY, ELITE COMFORT SOLUTIONS, FXI, INC., INNOCOR, INC., KOLCRAFT ENTERPRISES INC., LEGGETT & PLATT, INCORPORATED, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, AND UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO,**<br><br>  **Consolidated Plaintiffs,**<br><br>**v.**<br><br>**UNITED STATES,**<br><br>  **Defendant,** | **Before: Jennifer Choe-Groves, Judge**<br><br>**Consol. Court No. 21-00277** |

**and**

**BROOKLYN BEDDING, LLC, CORSICANA MATTRESS COMPANY, ELITE COMFORT SOLUTIONS, FXI, INC., INNOCOR, INC., KOLCRAFT ENTERPRISES INC., LEGGETT & PLATT, INCORPORATED, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, AND UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO,**

        **Defendant-Intervenors.**

## OPINION AND ORDER

[Sustaining in part and remanding in part Commerce's Final Results of Redetermination Pursuant to Court Order in the U.S. Department of Commerce's antidumping duty investigation of mattresses from Indonesia.]

Dated:  February 20, 2024

J. David Park, Henry D. Almond, Daniel R. Wilson, Leslie C. Bailey, Kang Woo Lee, and Gina Marie Colarusso, of Arnold & Porter Kaye Scholer, LLP, Washington, D.C., for Plaintiff PT. Zinus Global Indonesia.  With them on the brief were Phyllis L. Derrick and Eric Johnson.

Yohai Baisburd, Jeffrey B. Denning, Chase J. Dunn, and Nicole Brunda, of Cassidy Levy Kent (USA) LLP, Washington, D.C., for Consolidated Plaintiffs and Defendant-Intervenors Brooklyn Bedding, LLC, Corsicana Mattress Company, Elite Comfort Solutions, FXI, Inc., Innocor, Inc., Kolcraft Enterprises Inc., Leggett & Platt, Inc., International Brotherhood of Teamsters, and United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO.

L. Misha Preheim, Assistant Director, and Kara M. Westercamp, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for Defendant United States.  With them on the brief were Brian M. Boynton, Principal Deputy Assistant Attorney General, and Patricia M. McCarthy, Director.  Of counsel on the brief was David W. Richardson, Senior Counsel, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce.

Choe-Groves, Judge:  Before the Court is the U.S. Department of Commerce's ("Commerce") remand redetermination in the antidumping duty investigation of mattresses from Indonesia, filed pursuant to the Court's Remand Order in PT. Zinus Global Indonesia v. United States ("PT. Zinus"), 47 CIT __, 628 F. Supp. 3d 1252 (2023).  See Final Results of Redetermination Pursuant to Court Remand ("Remand Redetermination"), ECF Nos. 59-1, 60-1; see also Mattresses from Indonesia ("Final Determination"), 86 Fed. Reg. 15,899 (Dep't of Commerce Mar. 25, 2021) (final affirmative determination of sales at less than fair value), accompanying Issues and Decision Memorandum for the Final Affirmative Determination in the Less-Than-Fair-Market-Value Investigation of Mattresses from Indonesia ("IDM"), ECF No. 15-4.

In PT. Zinus, the Court remanded for Commerce to reconsider its inclusion of mattresses in transit from Indonesia at the end of the period of investigation in the calculation of constructed export price, adjustments made to the selling expenses of Plaintiff PT. Zinus Global Indonesia's ("Plaintiff" or "Zinus Indonesia") parent company, Zinus, Inc. ("Zinus Korea"), and the application of the Transactions Disregarded Rule. PT. Zinus, 47 CIT at __, 628 F. Supp. 3d at 1287–88. Commerce addressed each of these issues on remand. See Remand Redetermination. Plaintiff filed Plaintiff's Comments in Partial Opposition to Commerce's Remand Determination and Plaintiff's Comments in Partial Support of Commerce's Remand Determination. Pl.'s Cmts. Part. Opp'n Commerce's Remand Determination ("Pl.'s Cmts. Part. Opp'n"), ECF Nos. 64, 65; Pl.'s Cmts. Part. Supp. Commerce's Remand Determination ("Pl.'s Cmts. Part. Supp."), ECF No. 73. Defendant-Intervenors filed Defendant-Intervenors' Comments in Partial Opposition to the Final Results of Redetermination and Defendant-Intervenors' Comments in Partial Support of the Final Results of Redetermination. Def.-Intervs.' Cmts. Part. Opp'n Final Results Redetermination ("Def.-Intervs.' Cmts. Part. Opp'n"), ECF Nos. 62, 63; Def.-Intervs.' Cmts. Part. Supp. Final Results Redetermination ("Def.-Intervs.' Cmts. Part. Supp."), ECF Nos. 71, 72. Defendant filed Defendant's Response to Comments of Remand Redetermination. Def.'s Resp. Cmts. Remand Redetermination ("Def.'s Resp."), ECF No. 74, 75. For the

following reasons, the Court sustains in part and remands in part the <u>Remand Redetermination</u>.

## ISSUES PRESENTED

This case presents the following issues:

1.      Whether Commerce's inclusion of mattresses in transit as facts otherwise available in the calculation of constructed export price was in accordance with law and supported by substantial evidence;

2.      Whether Commerce's exclusion of Zinus Korea's selling expenses from the calculation of normal value was supported by substantial record evidence; and

3.      Whether Commerce's use of Indonesian Global Trade Atlas ("GTA") import data to value input purchase transactions involving an affiliated supplier in a non-market economy was supported by substantial evidence and in accordance with law.

## BACKGROUND

The Court presumes familiarity with the underlying facts and procedural history of this case and recites the facts relevant to the Court's review of the <u>Remand Redetermination</u>.  <u>See</u> <u>PT. Zinus</u>, 47 CIT at __, 628 F. Supp. 3d at 1258–59.

On March 30, 2020, an antidumping duty petition concerning imports of

mattresses from Cambodia, Indonesia, Malaysia, Serbia, Thailand, the Republic of

Turkey, and the Socialist Republic of Vietnam was filed with Commerce by

Brooklyn Bedding, LLC, Corsicana Mattress Company, Elite Comfort Solutions,

FXI, Inc., Innocor, Inc., Kolcraft Enterprises, Inc., Leggett & Platt, Inc., the

International Brotherhood of Teamsters, and the United Steel, Paper and Forestry,

Rubber, Manufacturing, Energy, Allied Industrial and Service Workers

International Union, AFL-CIO.  Antidumping Countervailing Duty Pet.

("Petition") (Mar. 31, 2020), PR 1–4, CR 1–10.[1]  In response to the Petition,

Commerce initiated on April 24, 2020 an antidumping investigation on mattresses

imported from Indonesia.  Mattresses from Cambodia, Indonesia, Malaysia, Serbia,

Thailand, the Republic of Turkey, and the Socialist Republic of Vietnam, 85 Fed.

Reg. 23,002 (Dep't of Commerce Apr. 24, 2020) (initiation of less-than-fair-value

investigations).  The period of investigation was January 1, 2019 through

December 31, 2019, the four most recent financial quarters prior to the filing of the

March 2020 Petition.  Id. at 23,003; Commerce's Decision Mem. Prelim.

Affirmative Determination and Postponement Final Determination Less-Than-

---

[1]  Citations to the administrative record reflect the public record ("PR") and
confidential record ("CR") document numbers filed in this case, ECF Nos. 39, 40,
76, 77.

Fair-Value Investigation Mattresses from Indonesia ("PDM") at 5, PR 226; see also 19 C.F.R. § 351.204(b)(1). Zinus Indonesia was selected as the sole mandatory respondent in the investigation. See Less-Than-Fair-Value Investigation Mattresses Indonesia Resp. Selection Mem., PR 66, CR 32.

Because Plaintiff was unable to identify the country of origin of imported mattresses after merchandise entered Plaintiff's United States warehouse, Commerce applied a quarterly ratios sales methodology to determine the quantity of Zinus Indonesia's U.S. sales for purposes of calculating constructed export price. See IDM at 8–9; PDM at 9–10; see also Commerce's Prelim. Determination Margin Calculation Zinus Indonesia at 1–3 (Oct. 27, 2020), PR 229, CR 258. The quarterly ratio was applied to the full universe of Zinus, Inc.'s ("Zinus U.S.") mattresses, including those mattresses that were in transit and had not yet entered the United States at the conclusion of the period of investigation. IDM at 8–9. Commerce calculated Zinus Indonesia's antidumping duty margin rate at 2.22 percent. Final Determination, 86 Fed. Reg. at 15,900.

The Court remanded for Commerce to explain and support its inclusion of mattresses in transit from Indonesia in its quarterly ratio calculations, Commerce's adjustments to the selling expenses of Zinus Korea, and Commerce's application of the Transactions Disregarded Rule. PT. Zinus, 47 CIT at __, 628 F. Supp. 3d. at 1287–88. On remand, Commerce continued to include in transit mattresses in its

calculation of constructed export price and to exclude affiliated party transfer payments from its margin calculations.  Remand Redetermination.  Commerce also continued to use the market import data for inputs into Indonesia.  Id.

## JURISDICTION AND STANDARD OF REVIEW

The Court has jurisdiction under 19 U.S.C. § 1516a(a)(2)(B)(i) and 28 U.S.C. § 1581(c), which grant the Court authority to review actions contesting the final determination in an antidumping duty investigation.  The Court shall hold unlawful any determination found to be unsupported by substantial evidence on the record or otherwise not in accordance with law.  19 U.S.C. § 1516a(b)(1)(B)(i). The Court also reviews determinations made on remand for compliance with the Court's remand order.  Ad Hoc Shrimp Trade Action Comm. v. United States, 38 CIT 727, 730, 992 F. Supp. 2d 1285, 1290 (2014), aff'd, 802 F.3d 1339 (Fed. Cir. 2015).

## DISCUSSION

### I.    Legal Framework

Commerce imposes antidumping duties on foreign goods if "(1) it determines that the merchandise 'is being, or is likely to be, sold in the United States at less than its fair value,' and (2) the International Trade Commission determines that the sale of the merchandise at less than fair value materially injures, threatens, or impedes the establishment of an industry in the United

States." <u>Diamond Sawblades Mfrs. Coal. v. United States</u>, 866 F.3d 1304, 1306

(Fed. Cir. 2017).  Antidumping duties are calculated as the difference between the

normal value of subject merchandise and the export price or the constructed export

price of the subject merchandise.  19 U.S.C. § 1673.

Normal value is ordinarily determined using the sales price of the subject

merchandise in the seller's home market.  19 U.S.C. § 1677b(a)(1)(B)(i).  If

Commerce determines that normal value cannot be reliably calculated using home

market or third-country sales, Commerce may use the subject merchandise's

constructed value as an alternative to normal value.  <u>Id.</u> § 1677b(a)(4).  The

method for calculating constructed value is defined by statute.  <u>Id.</u> § 1677b(e).

When calculating constructed value, Commerce must utilize the respondent's

actual selling, general, and administrative expenses, and profits in the respondent's

home market or a third-country market.  <u>Id.</u> § 1677b(e)(2)(A).  If Commerce

cannot rely on those data, it may look to:

> (i) the actual amounts incurred and realized by the specific exporter or
> producer being examined in the investigation or review for selling,
> general, and administrative expenses, and for profits, in connection
> with the production and sale, for consumption in the foreign country,
> of merchandise that is in the same general category of products as the
> subject merchandise,
>
> (ii) the weighted average of the actual amounts incurred and realized
> by exporters or producers that are subject to the investigation or review
> (other than the exporter or producer described in clause (i)) for selling,
> general, and administrative expenses, and for profits, in connection

> with the production and sale of a foreign like product, in the ordinary course of trade, for consumption in the foreign country, or
>
> (iii) the amounts incurred and realized for selling, general, and administrative expenses, and for profits, based on any other reasonable method, except that the amount allowed for profit may not exceed the amount normally realized by exporters or producers (other than the exporter or producer described in clause (i)) in connection with the sale, for consumption in the foreign country, of merchandise that is in the same general category of products as the subject merchandise.

Id. § 1677b(e)(2)(B).

Commerce must also calculate export price or constructed export price.

Export price is:

> the price at which the subject merchandise is first sold (or agreed to be sold) before the date of importation by the producer or exporter of the subject merchandise outside of the United States to an unaffiliated purchaser in the United States or to an unaffiliated purchaser for exportation to the United States,

subject to certain adjustments. Id. § 1677a(a). Constructed export price is:

> the price at which the subject merchandise is first sold (or agreed to be sold) in the United States before or after the date of importation by or for the account of the producer or exporter of such merchandise or by a seller affiliated with the producer or exporter, to a purchaser not affiliated with the producer or exporter,

subject to certain adjustments. Id. § 1677a(b). The price used to calculate

constructed export price is reduced by commissions, selling expenses, further

manufacturing expenses, and the profit allocated to these expenses. Id. § 1677a(d).

## II.    Facts Available Analysis

Plaintiff alleges that Commerce failed to comply with the statutory requirements under 19 U.S.C. § 1677e and 19 U.S.C. § 1677m(d) before applying adverse facts available against Zinus Indonesia.  Plaintiff argues that Commerce failed to request missing data regarding Zinus U.S.' inventory, and Commerce violated its statutory obligations when it filled in factual gaps regarding in transit subject merchandise and improperly applied adverse facts available.  Pl.'s Cmts. Part. Opp'n at 17–20.  The Government contends that it did not apply an adverse inference to Zinus Indonesia under 19 U.S.C. § 1677e(b).   Def.'s Resp. at 8–9. The Government does not assert that it used neutral facts otherwise available under 19 U.S.C. § 1677e(a), but merely argues that it did not apply adverse facts available.  See id.

The Court notes at the outset that Commerce did not make any determinations in its Remand Redetermination under 19 U.S.C. § 1677e(a) and 19 U.S.C. § 1677m(d) about the use of facts otherwise available, or under 19 U.S.C. § 1677e(b) about the use of an adverse inference.

Section 1677e(a) requires the use of facts otherwise available when necessary information is not available on the record, or a respondent withholds information that has been requested by Commerce, fails to provide the requested information by the deadlines in the form and manner requested, significantly

impedes a proceeding, or provides the requested information but the information

cannot be verified.  19 U.S.C. § 1677e(a).  Commerce explained in the <u>Remand</u>

<u>Redetermination</u> that Zinus U.S.' data in Exhibit SA-5 showed that the purchased

quantity of mattresses in inventory was less than the quantity Zinus U.S. reported

that it sold out of inventory during the period of investigation.  <u>Remand</u>

<u>Redetermination</u> at 6.  Thus, it appears that substantial evidence supports

Commerce's determination that certain data was missing because Zinus U.S. sold

more mattresses than it purchased and the data did not account for those missing

mattress quantities.

　　　19 U.S.C. § 1677e(a) specifies that if necessary information is not available

on the record, Commerce shall use facts otherwise available subject to 19 U.S.C.

§ 1677m(d).  It is not apparent from the <u>Remand Redetermination</u> that Commerce

requested information from Zinus Indonesia or Zinus U.S. about the missing sales

data subject to the requirements of 19 U.S.C. § 1677m(d).  The <u>Remand</u>

<u>Redetermination</u> does not mention Commerce's requests to Zinus Indonesia or

Zinus U.S. for the missing information, nor does it mention responses or a failure

to respond to such requests by the Zinus entities.  The Court agrees with Plaintiff's

argument that:

> [i]f Commerce had any doubt, or considered this information missing
> from the record, it had an obligation to ask Zinus for this information.
> It failed to do so.  Even if it were the case that Zinus had failed to

provide necessary information or otherwise satisfied 19 U.S.C.
§ 1677e(a), Commerce failed to observe the notice requirements of 19
U.S.C. § 1677m(d).

Pl.'s Cmts. Part. Opp'n at 18.  The Government does not address the facts

available issue under 19 U.S.C. § 1677e(a) and 19 U.S.C. § 1677m(d) in its brief,

only arguing that Commerce did not apply adverse facts available.  See Def.'s

Resp. at 9.

It is clear that Commerce failed to comply with the requirements under 19

U.S.C. § 1677m(d) to inform Zinus Indonesia of the nature of a deficiency and

provide Zinus Indonesia with an opportunity to remedy or explain the deficiency.

See Nippon Steel Corp. v. United States, 337 F.3d 1373, 1382–83 (Fed. Cir. 2003)

("[T]he statute requires a factual assessment of the extent to which a respondent

keeps and maintains reasonable records and the degree to which the respondent

cooperates in investigating those records and in providing Commerce with the

requested information").  Because Commerce failed to make the necessary

determinations to comply with its statutory obligations under 19 U.S.C. § 1677e(a)

and 19 U.S.C. § 1677m(d), the Court holds that Commerce's determination to use

in transit mattress information as facts otherwise available is neither in accordance

with law nor supported by substantial evidence.  The Court remands this issue for

further consideration and explanation.  The Court suggests that on remand,

Commerce should consider reopening the record to address the missing sales data,

inventory, and in transit mattress issues as Commerce fulfills its obligations under

19 U.S.C. § 1677m(d), especially because Commerce is requesting a remand to

reopen the record on a different issue, as discussed below.

### III.    Zinus Korea's Actual Selling Expenses

In the Final Determination, Commerce included Zinus Korea's actual

incurred selling expenses as a component of its margin calculation.  IDM at 32–33.

The Court remanded to Commerce for further explanation the question of Zinus

Korea's involvement in the sale of subject mattresses and the treatment of selling

expenses under the Korean-version International Financial Reporting Standards

("K-IFRS").  PT. Zinus, 47 CIT at __, 628 F. Supp. 3d at 1280–83.  On remand,

Commerce determined that Zinus Korea's involvement in the sale of subject

mattresses was minimal and continued to treat costs considered "commissions and

fees" under K-IFRS as payments between related parties and not as selling

expenses.  Remand Redetermination at 9–16.

In the Remand Redetermination, Commerce cited record evidence to support

its determination that Plaintiff reported that Zinus Korea's involvement in the sale

of subject mattresses to the United States during the period of investigation "was

limited to document and invoice management, i.e., receiving invoices from Zinus

Indonesia and forwarding them to affiliated and unaffiliated U.S. customers, as

even Zinus Korea's invoices were generated by Zinus Indonesia as part of Zinus

Indonesia's operations and sales process." Id. at 9–10; see Zinus Indonesia's Sec.

A Questionnaire Resp. (June 18, 2020) at A-15, PR 97–102, CR 36–39; Zinus

Indonesia's Sec. A Supp. Questionnaire Resp. (Aug. 20, 2020) at 9–10, PR 165,

CR 154. Commerce cited to the selling functions chart provided as an exhibit to

Zinus Indonesia's Section A Questionnaire Response. Remand Redetermination at

10; see Zinus Indonesia's Sec. A Questionnaire Resp. at Ex. A-7a. Commerce

determined that the chart indicated that for constructed export price sales from

inventory and back-to-back constructed export price sales, Zinus Korea's

involvement was limited to minimal order input and processing. Remand

Redetermination at 10; see Zinus Indonesia's Sec. A Questionnaire Resp. at Ex. A-

7a. Commerce determined that for export price sales, Zinus Korea was involved in

sales promotion, order input, and warranty services. Remand Redetermination at

10. Commerce also cited examples in the record supporting its determination that

Zinus Indonesia performed the majority of selling activities, including arranging

shipments and providing technical and sales support. Id. at 11; see Zinus

Indonesia's Sec. A Supp. Questionnaire Resp. at 10; Zinus Indonesia's Sec. C.

Questionnaire Resp. (Jul. 13, 2020) at Ex. C-16, PR 119–20; CR 96–97, 104–05,

117–20 (example of freight arrangements arranged by Zinus Indonesia); Zinus

Indonesia's Sec. A. Supp. Questionnaire Resp. at SA-6b (email regarding online

training); Zinus Indonesia's Sec. A Questionnaire Resp. at Ex. A-7b (sample

documents relating to categories of sale reflected in Zinus Indonesia's selling functions chart).

Defendant-Intervenors disagree with Commerce's determination, arguing that record documents demonstrate that Zinus Korea took a more active role in all sales of subject mattresses. Def.-Intervs.' Cmts. Part. Opp'n at 2–3 (citing Zinus Indonesia's Sec. A Questionnaire Resp. at A-8). Defendant-Intervenors point to Zinus Indonesia's Section A Questionnaire Response as contrary record evidence showing that for both constructed export price sales and export price sales, Zinus Indonesia sold subject mattresses to Zinus Korea, which resold the subject mattresses to affiliated or unaffiliated customers in the United States. Id. at 3; see Zinus Indonesia's Sec. A Questionnaire Resp. at A-18–A-19. Defendant-Intervenors also argue that record evidence shows that Plaintiff referred to export price sales as sales by Zinus Korea. Def.-Intervs.' Cmts. Part. Opp'n at 4; see Zinus Indonesia's Sec. A Questionnaire Resp. at A-3; Zinus Indonesia's Sec. A Supp. Questionnaire Resp. at 11. Defendant-Intervenors contend that it would be commercially unreasonable for Zinus Korea to be responsible for a significant number of sales while not incurring expenses for sales staff or administrative overhead. Def.-Intervs.' Cmts. Part. Opp'n at 4.

The Government acknowledges existing deficiencies and contradictions in the record with regard to Zinus Korea's selling functions and requests a remand of

this issue to reopen the record for additional information.  Def.'s Resp. at 15–17.

The Court concludes that remand is appropriate on this issue because Commerce's

determinations with respect to the exclusion of Zinus Korea's selling expenses are

not supported by substantial evidence.

### IV.    Transactions Disregarded Rule

Commerce determined that during the period of investigation, Zinus

Indonesia obtained ten types of material inputs from affiliated suppliers in the

People's Republic of China.  IDM at 16–18; Remand Redetermination at 16.

Because the suppliers were in a non-market economy, Commerce determined that

it was unable to use the affiliated suppliers' prices and costs in calculating normal

value.  IDM at 17; Remand Redetermination at 16–17.  In the Preliminary

Determination, Mattresses From Indonesia, 85 Fed. Reg. 69,597 (Dep't of

Commerce Nov. 3, 2020) (preliminary affirmative determination of sales at less

than fair value, postponement of final determination, and extension of provisional

measures), Commerce calculated and applied an average of the market prices of

GTA import data for Brazil, Indonesia, Malaysia, Mexico, Romania, Russia, and

Turkey.  IDM at 17–18; Commerce's Cost Production Constructed Value

Calculation Adjustments Prelim. Determination (Oct. 27, 2020) at 1–2, PR 231,

CR 262.  In the Final Determination, Commerce changed its approach and adopted

only GTA data from Indonesia to calculate normal value.  IDM at 18.  Commerce

interpreted the phrase "market under consideration" in 19 U.S.C. § 1677b(f)(2) to only refer to the market under review in the investigation.  Id.  The Court found this interpretation to be overly narrow and remanded for Commerce to provide further explanation or to reconsider whether Commerce's selection of Indonesia constituted a reasonable method to confirm that the affiliated prices reflect arm's length transactions under 19 U.S.C. § 1677b(f)(2).  PT. Zinus, 47 CIT at __, 628 F. Supp. 3d at 1287.

On remand, Commerce continued to use the Indonesian GTA data "because actual market import prices into Indonesia are more likely to be available to our Indonesian respondent than market import prices into other countries."  Remand Redetermination at 16–23.

Under the Transactions Disregarded Rule, Commerce may disregard the transfer price of inputs provided to a respondent by an affiliated supplier and instead use the input's market price in calculating normal value.  19 U.S.C. § 1677b(f)(2).  Commerce applies the Transactions Disregarded Rule through a multi-step process.  Best Mattresses Int'l Co. v. United States ("Best Mattresses"), 47 CIT __, __, 622 F. Supp. 3d 1347, 1383–84 (2023).  First, Commerce looks at whether the respondent purchased the input from an affiliated supplier.  Id. at 1383.  If that information is not available, Commerce looks to sales of the input by the affiliated supplier to an unaffiliated buyer.  Id.  When no other information is

available, Commerce looks to a reasonable source of market value available on the

record.  Id.  As the Court previously noted, when resorting to a "reasonable source

for market value," if "a market price is not available, Commerce has developed a

consistent and predictable approach whereby it may use an affiliate's total cost of

providing the [good or service] as information available for a market price."  PT.

Zinus, 47 CIT at __, 628 F. Supp. 3d at 1285 (quoting Best Mattresses, 47 CIT at

__, 622 F. Supp. 3d at 1383–84).  The phrase "market under consideration" is

purposefully broad to allow Commerce to choose a market that allows for a

reasonable source for market value to confirm that the affiliated prices reflect

arm's length transactions.  Id.

Defendant-Intervenors argue that Commerce has not sufficiently explained

or supported its change in practice to use only GTA data from Indonesia.  Def.-

Intervs.' Cmts. Part. Opp'n at 9–12.  Defendant-Intervenors contend that

Commerce has an established practice of calculating market price in a manner that

best represents the respondent's own experience in the market under consideration.

Id. at 9–10 (citing Unicatch Indus. Co. v. United States, 45 CIT __, __, 539 F.

Supp. 3d 1229, 1249 (2021)).

In a situation in which transactions are performed between two affiliates and

not at arm's length, Commerce must attempt to determine an amount that would

have occurred if the parties had not been affiliated.  19 U.S.C. § 1677b(f)(2).  As

Commerce explained in the Remand Redetermination, adoption of the Indonesian

GTA data allowed for the calculation of a market rate that Zinus Indonesia would

have experienced but for its affiliation to its suppliers.  Remand Redetermination at

19–20.  Because a reasonable market price was available on the record, it was not

necessary for Commerce to consider other available options, such as the average of

other country GTA data.  The Court concludes that Commerce's reliance on the

Indonesian GTA data was reasonable, in accordance with law, and supported by

substantial evidence.  The Court sustains Commerce's application of the

Transactions Disregarded Rule.

## CONCLUSION

Accordingly, it is hereby

**ORDERED** that the Court sustains Commerce's application of the

Transactions Disregarded Rule; and it is further

**ORDERED** that the Remand Redetermination is remanded to Commerce to

reconsider consistent with this opinion the inclusion of mattresses in transit; and it

is further

**ORDERED** that the Remand Redetermination is remanded to Commerce to

reconsider consistent with this opinion Zinus Korea's selling expenses; and it is

further

**ORDERED** that this case shall proceed according to the following schedule:

(1)  Commerce shall file its remand determination on or before April 19, 2024;

(2) Commerce shall file the administrative record on or before May 3, 2024;

(3) Comments in opposition to the remand determination shall be filed on or before June 17, 2024;

(4) Comments in support of the remand determination shall be filed on or before July 17, 2024; and

(5) The joint appendix shall be filed on or before July 26, 2024.

___/s/ Jennifer Choe-Groves___
Jennifer Choe-Groves, Judge

Dated:   __February 20, 2024__
              New York, New York